IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NORMAN LYNN FOUNTAIN, ) | |
|     Petitioner, ) | |
| ) | |
| v. ) | No. 3:14-CV-3537-N |
| ) | |
| WILLIAM STEPHENS, Director, TDCJ-CID, ) | |
|     Respondent. ) | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

### I. Procedural Background

Petitioner filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges two convictions for violation of a protective order, enhanced by a prior felony. *State of Texas v. Norman Lynn Fountain*, Nos. F-0960990-R and F-1053947-R (265th Jud. Dist. Ct., Dallas County, Tex., June 2, 2011). He was sentenced to eleven years in prison in cause number F-0960990 and fourteen years in prison in cause number F-1053947-R.

On February 2, 2013, the Fifth District Court of Appeals affirmed the convictions and sentences. *Fountain v. State*, Nos. 05-11-00753-CR and 05-11-00797-CR (Tex. App. – Dallas, Feb. 2, 2013, pet. ref'd). On May 5, 2013, the Court of Criminal Appeals refused Petitioner's petitions for discretionary review.

On October 7, 2013, Petitioner filed state habeas petitions attacking each conviction. *Ex parte Fountain*, Application Nos. 80,930-01, -02. On February 26, 2014, and March 5, 2014, the Court of Criminal Appeals denied the petitions without written order.

On September 9, 2014, Petitioner filed the instant § 2254 petition. He argues:

1. "Defense counsel failed to present exculpatory evidence because he [labored] under actual conflict of interest" with a juror;

2. He was denied effective assistance of counsel at trial, where counsel:

   a. "fail[ed] to present exculpatory evidence," namely that Petitioner "never was arrested at 6910 Cockerell Hill both times never at the address;"

   b. failed to object to the indictments, each of which improperly alleged a prior conviction for enhancement purposes but which Petitioner had "won;"

   c. failed to "acknowledge to the jury that the D.A. offer was 5 years;"

   d. failed to inform the jury that "one of the juror[s] went to school with the D.A. and was friend that alon[e] was a conflict;" and

   e. "lied that [Petitioner] got out on bond on the [2009] case use fal[se] statement to keep [Petitioner] in jail;"

3. "The D.A.[,] judge, and [Petitioner's] attorney hide exculpatory evidence Brady v. Maryland" – "[d]uring the trial [Petitioner] sent a note to the Judge concerning the conflict on the D.A. Friend who's attorney on the juror plus one black juror all the rest from upper class establishment, not from [Petitioner]'s neighborhood[,] jury not of my peer[s but] the rest is white one Black not fair or Hispanic;"

**Findings, Conclusions and Recommendation
of the United States Magistrate Judge**       Page -2-

4.  (a) "False Indictment not allow [Petitioner] shuff[le] of jury plus not to question all witness plus Willie Parham who claim he was there at examining [sic] also stated that [the complainant] can't violate the protective order she did by living together,"

    (b) Petitioner's "liberty was taken from [him] through false statement and Acosta. Failed to present evidence and lies of [the Complainant] was deferent [sic] from the last trial [Petitioner] won;"

5.  Counsel failed to "acknowledge that [his] last 4 attorney was value [sic] to [his] case," where their "testimony would [have] discredited [the Complainant];"

6.  The State prosecutor "did not acknowledge to the Juror [sic] that she offer[ed] [him] 5 years for both case plus that [he] was release, case, drop in [2009] cases and theirs [sic] no paperwork to approve that [he] made a bond or P.R. bond [he] was release[d] because the State had no case;"

7.  Petitioner's trial counsel violated client confidentiality by informing "the D.A. that [the Complainant] was drop[p]ing the case;"

8.  "The D.A. office knew that the protective order has [expired] and came up with the nunc pro tunc" outside the presence of Petitioner or his counsel;

9.  Petitioner's trial counsel should have explored the Complainant's violation of the protective order she filed against Petitioner;

10. Both indictments were void because they each contained an enhancement paragraph which alleged "one case [Petitioner] won;"

11. Petitioner filed "a motion for impeachment concerning the sentence for enhancement

and it was never brought up why;"

12. Petitioner filed for "shuffle of jury and [his] lawyer had no right to refuse [him] that;"

13. "Why did they turn away the first jury in which they stated they could not see to give [Petitioner] 2-20 years because the case was not abuse case. Why was [Petitioner] denied that, and to choose another jury. Plus to pay 8 thousand in court cost when this is not a murder trial or to pay victim fee;"

14. At the sentencing phase of trial, Petitioner was denied the opportunity to view letters presented by the prosecutor, from Petitioner to the Complainant;

15. Counsel was deficient for failing to "challenge [the letters] if they were in [Petitioner's] handwriting;" and

16. Counsel was deficient for "fail[ing] to bring [Petitioner's] witness plus challenge [his] bonds issues and examing [sic] prehearing statement by Willie Parham."

(Pet. at 6-7.)

On February 27, 2015, Respondent filed his answer. On March 26, 2015, Petitioner filed his reply. The Court now determines the petition should be denied.

## II. Factual Background

The following factual background is taken from the opinion of the Fifth District Court of Appeals.

> Kimberly Johnson initially applied for a protective order against [Fountain], whom she had dated in the past, in 2007. The trial court held a hearing on her application on December 6, 2007. [Fountain] had received notice of the hearing, which included Johnson's application and the restrictions she sought. [Fountain] attended the hearing and represented himself. He questioned Johnson, and he was present when the trial court granted the protective order (the "First Protective Order") that day. Indeed, [Fountain] signed the First Protective Order that day in Johnson's presence. [Fountain] subsequently

pleaded guilty to violating the First Protective Order on December 10, 2008 by going to Johnson's residence; he was placed on probation. [Fountain] was convicted again of violating the First Protective Order by going to Johnson's residence on August 9, 2009. Then, on November 5, 2009,[Fountain] banged on Johnson's apartment door at 3:30 a.m. She called 911, but the police were not able to arrest [Fountain] at that time. He returned at 9:00 the same morning, and this time police were able to locate and arrest him.

The First Protective Order expired after two years, and Johnson applied for another order in December 2009. Evidence at trial established [Fountain] was served with the application and notice of the hearing—which, again, contained the restrictions sought for the protective order—that was scheduled for December 28, 2009. [Fountain] appeared on that date, but he requested the hearing be reset for January 11, 2010. The trial court granted his request, but issued a temporary protective order. [Fountain] signed that order, which set forth the new date for the hearing. On January 11, however, [Fountain] did not attend the hearing. His attorney was present, and when the judge took testimony, the attorney questioned Johnson. A new protective order was issued at the hearing (the "Second Protective Order"), which again forbade [Fountain] to go near Johnson's residence. Johnson testified that [Fountain] called her the day of the hearing; he had tried to persuade her not to go through with obtaining another protective order, but she told him on that phone call that she had done so.

Shortly after the January 11 hearing on the Second Protective Order, someone in the district attorney's office discovered that the first page of the Second Protective Order contained a typographical error: the order was dated January 11, 2009 instead of January 11, 2010. The district attorney obtained a corrected order nunc pro tunc. The undisputed testimony was that the only change to the order was the correction of the year on the first page. (The incorrect date on the district attorney's form had also been printed on the signature page, but the trial court corrected that error himself when he signed the Second Protective Order.) It appears that neither Johnson nor [Fountain] was informed of the nunc pro tunc order.

On April 1, 2010, [Fountain] repeatedly telephoned Johnson while she was in class. When she arrived at her apartment afterwards, she saw [Fountain] in a car pulling out of the complex. She drove in and parked in an effort to go quickly to her apartment, but [Fountain] turned his car around and blocked Johnson's escape. She refused to get out of the car and called 911; [Fountain] eventually left.

*Fountain*, 2013 WL 1245725, *1-2.

## III. Discussion

### 1. Standard of Review

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254 provide:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

See 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

### 2. Procedural Bar

Respondent argues Petitioner's claims 1, 2a, 2c, 3 (in part), 4 through 16, and 2(e) as to cause number F-0960990-R, are procedurally barred because Plaintiff failed to properly raise these claims in state court.

A federal court will ordinarily not review a claim where a petitioner has not presented his claim to the highest court of the state and the state court to which he would be required to present his claims would now find the claim procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 729-31 (1991). Further, the Fifth Circuit has held that "[t]o exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (citations omitted). That is, the state courts must have been apprised of the same facts and legal theories that a petitioner urges in his federal petition. *Duncan v. Henry*, 513 U.S. 364, 365-366 (1995); *see also Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) ("A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement.").

The record shows Petitioner did not raise any of his current claims on direct appeal. Although he raised some of his current claims in his petition for discretionary review, claims raised in a petition for discretionary review must first be raised on direct appeal. *Myers v. Collins*, 919 F.2d 1074, 1077 (5th Cir. 1990). Therefore, none of Plaintiff's current claims that were raised in his petition for discretionary review were considered by the Court of Criminal Appeals. *Id.*

Additionally, Plaintiff failed to raise these claims in his state habeas petition. Although some of his state habeas claims rely on the same facts as his current claims, they do not present the same legal theories and are not "substantially equivalent" to his state court claims. Accordingly, the Texas Court of Criminal Appeals has not reviewed the claims. If this Court were to require Petitioner to return to state court to exhaust these claims, they would be subject to dismissal as an abuse of the writ.

To overcome the procedural bar established by the abuse-of-the-writ doctrine, a petitioner must demonstrate: (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a "fundamental miscarriage of justice." *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 750). Petitioner has not shown sufficient cause for his failure to present these claims to the Texas Court of Criminal Appeals.

Petitioner has also failed to demonstrate the need to prevent a miscarriage of justice. This exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). To establish the required probability that he was actually innocent, a petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show it was more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Id.* (citing *Schlup*, 513 U.S. at 327). Petitioner has presented no new, reliable evidence showing that it was more likely than not that no reasonable juror would have convicted him. Accordingly, the procedural default doctrine bars federal habeas relief on these claims.

3.  **Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel. To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and

"every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

**(A)  Enhancement**

In claim 2(b), Petitioner claims his counsel failed to object to the indictments, each of which improperly alleged a prior conviction for enhancement purposes that Petitioner had "won." The record reflects, however, that trial counsel did object to the indictment that improperly alleged a cause number in which Petitioner had been acquitted. (Trial Tr. Vol. 2 at 6). The record also shows the enhancement paragraph was amended to reflect a corrected cause number. (*Id*; *see also* Clerk's Record 05-11-00753 at 47 and 05-11-00797 at 51 (jury charges reflecting correct cause numbers)). Petitioner's claim of ineffective assistance of counsel is without merit and should be denied.

**(B)  Juror**

In claim 2(d), Petitioner claims counsel failed to inform the jury that "one of the juror[s] went to school with the D.A. and was friend that alon[e] was a conflict." The record shows,

however, that the trial judge asked the venire panel whether they knew any of the parties. (Trial Tr. Vol. 3 at 5-6.) In response to one venire member, the trial court stated: "Let me guess. You went to law school with Ms. Behgooy. . . . Okay, anybody else go to law school with Meredith?" (*Id.*) Therefore, the record shows the entire venire panel was informed that a panel member, and later jury member, attended law school with one of the prosecutors. Petitioner's ineffective assistance of counsel claim is without merit.

### (C) Bond

Fountain claims his trial counsel lied that he "got out on bond on the [2009] case use fal[se] statement to keep [Fountain] in jail." Petitioner, however, has failed to show his counsel made any false statement to keep him in jail. Petitioner's claim is conclusory and should be denied. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).

### 4. *Brady v. Maryland*

Petitioner claims exculpatory evidence was withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). He states that during trial, he intended to send a note to the judge to inform him that one of the jurors went to law school with one of the prosecutors. He claims his attorney confiscated the note and did not give it to the judge.

To establish a *Brady* claim, Petitioner must show that the prosecution suppressed favorable, material evidence that was not discoverable through due diligence. *Brady*, 373 U.S. at 87. Evidence is "material" if there is a "reasonable probability" that the outcome of the trial would have been different had the evidence been disclosed to the defendant. *United States v. Freeman*, 164 F.3d 243, 248 (5th Cir. 1999).

In this case, Petitioner has failed to identify any exculpatory evidence that was withheld. Further, as discussed above, the court and both parties were informed during voir dire that a juror attended law school with the prosecutor. Petitioner's claim should be denied.

## 5. Summary

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## RECOMMENDATION

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed this 19 day of January, 2016.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).